IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| JESSIE PAYNE-RANA, | |
| Plaintiff, | No. 2:24-cv-01984-MO |
| v. | OPINION AND ORDER |
| B. WOOD, DAVID PEDRO, J. WHITE, C. SCHRUDDER, | |
| Defendants. | |

**MOSMAN, J.,**

This matter comes before me on Defendants B. Wood's, David Pedro's, J. White's, and C. Schrudder's (collectively, Defendants) Motion for Summary Judgment, [ECF 33], on Plaintiff Jessie Payne-Rana's 42 U.S.C § 1983 First Amendment retaliation claims. Because Payne-Rana is a prisoner in custody of the Oregon Department of Corrections (ODOC) who is representing himself in this matter, I advised him on the requirements needed to defeat Defendants' Motion. *See* Summary Judgment Advice Notice and Scheduling Order, [ECF 36]. I have carefully considered the parties' briefing and the record, and for the reasons set forth below, I grant the Defendants' Motion and dismiss this matter with prejudice.

///

///

1 – Opinion and Order

## BACKGROUND

At all times relevant to this action, Payne-Rana was a prisoner at Eastern Oregon Correctional Institution (EOCI). B. Wood, a Correctional Sergeant with ODOC, was the Visiting Room Supervisor at EOCI. Wood Decl., [ECF 35] at ¶ 1. Sergeant Wood's duties required him to be knowledgeable of the rules and policies for facility access, oversee visitor intake, monitor the Visiting Room and other areas of control to reduce the risk of contraband coming into the prison and to ensure a safe environment for all visitors and prisoners, report any incidents, conduct security checks, supervise and direct staff, and ensure that each prisoner entering and exciting the Visiting Room was searched. *Id.* at ¶ 2. Sergeant Wood knew Payne-Rana's mother Joy Rana because she regularly visited Payne-Rana. *Id.* at ¶ 4. J. White and C. Schrudder are correctional officers at EOCI and were assigned to the Visitor Room on August 23, 2023. *See* Pedro Decl., [ECF 34] at Ex. 2, p. 5. David Pedro is the Superintendent of EOCI. *Id.* at ¶ 1. He investigated the allegations that Payne-Rana and his mother made about Sergeant Wood in August and October 2023. *Id.* at ¶¶ 6–7.

### I.    August 16 and 23, 2023 visits

Payne-Rana's mother and then five-year old niece visited him on August 16, 2023. [ECF 35] at ¶ 5; *see also* [ECF 34] at Exs. 1 & 3. During the visit, staff warned Payne-Rana about his physical contact with his young niece, telling him to keep his hands on the table during visits. [ECF 35] at ¶ 5; [ECF 34] at Ex. 2, p. 5; *see also* Mot. for Obj. to Defs' Req. for Summ. J., [ECF 41] at 1.

About a week later, Payne-Rana's mother and niece visited him again. [ECF 35] at ¶ 6. ODOC staff observed Payne-Rana hold his niece in his lap, restrain her movement, and lift and look down the collar of her shirt. *Id.*; [ECF 41] at 2. At the time it happened, ODOC staff viewed

2 – Opinion and Order

the conduct as inappropriate but on review, a hearings officer determined that the conduct was non-sexual in nature. [ECF 34] at Ex. 2, pp. 1–3. ODOC staff also observed Payne-Rana's mother writing inappropriate things on a whiteboard, which was visible to the entire Visiting Room. [ECF 35] at ¶ 6. Sergeant Wood and Officer White pulled Payne-Rana into a side room to question him about the whiteboard writing. *Id.* at ¶ 7. Payne-Rana explained that his mother had written things that they did not want his niece to hear and dismissed the behavior as a "laughing matter" that "was intended to be funny." *Id.* Sergeant Wood and Officer White had a discussion with Payne-Rana about the rules of visiting and ultimately let Payne-Rana return to the Visiting Room. *Id.*; *see also* [ECF 34] at Ex. 2, p. 6–10 (memos describing the incident).

After Payne-Rana's visit resumed, Officer Schrudder documented that Payne-Rana's mother continued to write inappropriate words and messages aimed at ODOC staff on the whiteboard, noting that Ms. Rana backed away from the whiteboard so that ODOC staff could see it on the security camera. [ECF 34] at Ex. 2, p. 10. The last message that Ms. Rana wrote to staff was "? R U targeting Jessie?". *Id.* ODOC staff also overheard Payne-Rana say "f*** those officers, they don't' know who they are messing with. I will have MS-13 over here" after the visit resumed. *Id.* at p. 7. At that point, Sergeant Wood terminated the visit, and Payne-Rana said to his mother, "call Joey and get MS13 here now." *Id.* After evaluating the events in the Visiting Room, Sergeant Wood received approval to place Payne-Rana in segregation. [ECF 35] at ¶ 9.

On August 30, 2023, about seven days after the visit, an ODOC staff member reported that while in the bathroom with Ms. Rana on August 23, 2023, the staff member heard Ms. Rana telling the child with her that, among other things, "Sergeant Wood is a really bad guy" "he made me lift up my shirt and that is illegal. He was just trying to see my boobs." [ECF 34] at Ex. 2, p. 16. The staff member learned that the woman and child were visiting Payne-Rana, and she reported the

3 – Opinion and Order

incident to EOCI's Assistant Superintendent of Security because she "didn't appreciate the way this visitor talked about our employees, especially CO Wood. It made [her] really uncomfortable." *Id.*

## II. Misconduct Filing

On August 30, 2023, after gathering information from other ODOC staff and reviewing the video of Payne-Rana's August 23, 2023, visit with his mother and niece, Sergeant Wood submitted a misconduct report. [ECF 35] at ¶ 10. After reviewing the report, the hearings officer dismissed one of the charges without prejudice and directed Sergeant Wood to resubmit the misconduct report with requested charges of Extortion I, Disrespect I, and Disobedience of an Order I. [ECF 34], Ex. 2 at 29. Sergeant Wood resubmitted the misconduct report with those charges. *Id.* at Ex. 3, p. 6. Payne-Rana admitted his Disrespect I charge, pleaded no contest to Disobedience of an Order I, and denied Extortion I. *Id.* at p. 5. Payne-Rana, however, admitted that he made the statement "F*** those officers" to his mother and that he threatened to "get the MS-13 over here." *Id.* at pp. 21–22. The hearing officer found against Payne-Rana on all three charges on the grounds that he "overtly failed to comply with valid staff directives in the facilities visiting room" and "made statements intended to intimidate staff with the intent to compel staff to refrain from performing their job duties." *Id.* at p. 2.

## III. Payne-Rana's Reports about Sergeant Wood

Payne-Rana alleges that he reported that Sergeant Wood "was making up accusations that I was being in appropriate with my niece" to the Inspector General's Hotline on August 23, 2023. Am. Compl., [ECF 11] at 8. He claims that on August 28, 2023, he again called the Inspector General's hotline and reported Sergeant Wood for "being foul and unprofessional" based on Sergeant Wood asking whether Payne-Rana's mother liked Sergeant Wood or not. *Id.* at 9. ODOC,

4 – Opinion and Order

however, has no record of either Payne-Rana or Ms. Rana reporting Sergeant Wood before Panye-Rana's misconduct charge. [ECF 35] at ¶ 12; *see* [ECF 34] at ¶ 6 (noting that ODOC records reflect that Payne-Rana made two calls to the Inspector General's hotline); *id.* at Exs. 4–5 (Officer Clark's denial that he received communications or reports from Payne-Rana).

ODOC records show that Payne-Rana made two phone calls to the Inspector General's Hotline. [ECF 34] at ¶¶ 6–8, Exs. 4–6. The first call was on August 31, 2023, in which Payne-Rana claimed Sergeant Wood was harassing him. *Id.* at Ex. 4. The second was on October 15, 2023, when Payne-Rana claimed that Sergeant Wood sexually harassed his mother and harassed him. *Id.* Additionally an October 19, 2023, Petition for Administrative Review of his disobedience misconduct charge, Payne-Rana alleged that he did not comply with prison rules "because: Sgt. B. Wood was sexually harassing my mother and other visitors." [ECF 34] at Ex. 3, 19. Payne-Rana also alleged that Sergeant Wood retaliated against him during the August 23, 2023, visit "for my mother reporting him" by "harassing him" and "targeting him" while he played with his niece. *Id.*

Superintendent Pedro investigated Payne-Rana's August 31 and October 15, 2023, allegations and ultimately concluded that Payne-Rana (and his mother's) allegations against Sergeant Wood were unfounded. *Id.* at Exs. 4–6. While investigating, Superintendent Pedro had several meetings with Payne-Rana, during which Payne-Rana asked to be transferred to Two Rivers Correctional Institution. *Id.* at ¶ 9. Superintendent Pedro agreed and transferred Payne-Rana. *Id.*

## IV.     Payne-Rana's Lawsuit

Payne-Rana filed his pro se Complaint in this matter on November 24, 2024. Complaint, [ECF 1]. Pursuant to my Order, Payne-Rana filed his Amended Complaint on January 30, 2025. [ECF 11]. On February 20, 2025, I dismissed Payne-Rana's Eighth and Fourteenth Amendment

claims for failure to state a claim upon which relief could be granted and allowed this matter to go forward only on his First Amendment retaliation claims. Order to Dismiss, [ECF 15].

## DISCUSSION

### I. Legal Standard

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this burden, the non-moving party must go beyond the pleadings and point out "specific facts showing that there is a genuine issue of for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In the prison context, a First Amendment retaliation claim under 42 U.S.C § 1983 must establish that a state actor took a harmful action against a prisoner because of that prisoner's protected conduct and that the action did not "reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (listing the five elements of a prisoner First Amendment retaliation claim). The filing of grievances against prison officials is a protected activity. *Id.* 408 F.3d at 567–68. A prisoner successfully pleads that the harmful action did not reasonably advance a legitimate correctional goal by alleging along with a retaliatory motive, the defendant's actions were "arbitrary and capricious" or "unnecessary to the maintenance of order in the institution." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

///

6 – Opinion and Order

## II. Analysis

Even viewing the facts in a light most favorable to Payne-Rana, he fails to show "that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (when considering granting summary judgment, a court views all facts and makes all inferences in the light most favorable to the non-moving party). Payne-Rana speculates that Sergeant Wood knew that he and his mother had complained about Sergeant Wood before the August 23, 2023, visit and the misconduct report submission. [ECF 11] at 9 (claiming to have reported that Sergeant Wood was harassing him to the Inspector General's hotline on August 28, 2023); [ECF 41] at 3 (alleging that his mother immediately reported a complaint in "May 2023" to EOCI staff member Brian Clark). Payne-Rana, however, offers no evidence to support either his speculations about Officer Wood's knowledge or that he or his mother reported Sergeant Wood for harassment before Sergeant Wood submitted the misconduct report. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 242, 248–49 (1986) (suggestions that facts are in controversy, as well as conclusory testimony in moving papers is not enough to defeat summary judgment); *see also Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that "sheer speculation" that prison officials were aware of prisoner's protected conduct was not enough to survive summary judgment on a First Amendment retaliation claim). Instead, the evidence in the record—Officer Wood's declaration and ODOC records—establish that no triable factual exists regarding whether Payne-Rana or his mother made reports to anyone at ODOC before Sergeant Wood submitted a misconduct report on August 30, 2023, based on Payne-Rana's behavior during the August 23, 2023, visit.[1] [ECF 35] at ¶10; [ECF 34] at Ex. 4 (email from Bryan

---

[1] In his opposition, Plaintiff asserts that interrogatories that Defendants never answered "are part of the evidence showing the beginning of the retaliation . . . by Defendant Sgt B. Wood." [ECF 41] at 3. But this evidence—whether Sergeant Wood was aware of the reason for Payne-

7 – Opinion and Order

Clark denying that he had received a report from Payne-Rana's mother); *id.* at Ex. 2 (kytes responding to the misconduct report making no mention of any harassment by Officer Wood); *id.* at Ex. 6 (documenting investigation of reports by Payne-Rana about Officer Wood). Accordingly, I find that Sergeant Wood is entitled to summary judgment on Payne-Rana's retaliation claim because the undisputed evidence shows that Sergeant Wood did not know about any complaints Payne-Rana may have made about him at the time that he submitted the misconduct report on August 30, 2023. *See Rhodes*, 408 F.3d at 567–68 (issue of fact about whether a prison official took harmful action against a prisoner because of the prisoner's protected conduct is an essential element of a prisoner's First Amendment retaliation claim).

Based on the record, I find that Superintendent Pedro is entitled to summary judgment because Payne-Rana has not made any allegations against him that constitute a First Amendment retaliation claim in the prison context. *See id.*; *Rico v. Ducart*, 980 F.3d 1292, 1303 (supervisory prison official's liability under § 1983 must be based on personal involvement in the alleged deprivation or a casual connection between their unlawful conduct and the alleged violation); *see generally*, [ECF Nos. 11, 41, and 45]. Likewise, I find that Officers White and Schrudder are entitled to summary judgment because Payne-Rana makes no allegations that would support a First Amendment retaliation claim against either Officer. *See Rhodes*, 408 F.3d at 567–68. Payne-Rana claims that Officer Schrudder saw Sergeant Wood's and Officer White's unprofessional conduct

---

Rana's incarceration—would not defeat summary judgment because it would not create an issue of material fact regarding whether Payne-Rana or his mother reported Sergeant Wood for harassment before either the August 23, 2023, visit or the submission of the misconduct report. *Id.* ("Plaintiff asked Defendant Wood . . . at any time during the timeframe of August 2023 through August 2023, were you on or looking at my file in the AS-400 location of the discovery of why I am in custody") *Cf. Cornwell v. Electra Cen. Credit Union*, 439 F.3d 1018, 1026 (9th Cir. 2006) (a district court abuses it discretion in denying additional discovery only if "the movant can show how the allowing additional discovery would have precluded summary judgment").

and failed to report them and that Officer White harassed him in the visiting room. [ECF 11] at 6, 8; [ECF 41] at 4. But neither failing to report unprofessional conduct nor harassment that is not based on a prisoner's protected conduct can form the basis for a First Amendment retaliation claim in the prisoner context. *See Rhodes*, 408 F.3d at 567–68.

Finally, even if Payne-Rana could establish a genuine issue for trial on his claims against Defendants, they would be immune from suit under the doctrine of qualified immunity. First, the facts here establish that neither Superintendent Pedro nor Officers White and Schrudder's conduct violated Payne-Rana's First Amendment rights. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (the first step in a qualified immunity analysis is whether the facts alleged show a violation of a constitutional right); *see also DeFrancesco v. Robbins*, 136 F.4th 933, 938 (9th Cir. 2025) (first step in assessing qualified immunity is whether "the plaintiff has plausibly alleged a violation of a constitutional right"). Second, to the extent that Payne-Rana's claim against Sergeant Wood is plausible, Sergeant Wood is qualifiedly immune from suit because no reasonable official would have understood that submitting the misconduct charge against Payne-Rana was unlawful. *DeFrancesco*, 136 F. 4th at 939 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011))). Discipling a prisoner, even if it is close in time to a prisoner's protected conduct, does not violate the Constitution as long as the discipline "reasonably advance[s] a legitimate correctional goal." *Rhodes*, 408 F.3d at 567–68; *see also Watison*, 668 F.3d at 1114 (no Constitutional violation when discipline serves a legitimate correctional goal); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (courts evaluating retaliation claims "should afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory"). The undisputed record here establishes that the misconduct charge Sergeant Wood submitted served the legitimate correctional goal of preserving institutional security. *See Barnett*

9 – Opinion and Order

*v. Centoni*, 31 F.3d 813, 815–16 (9th Cir. 1994) (preserving institutional security is a legitimate correctional goal). Payne-Rana pled no contest to two of the charges and admitted to the conduct that formed the basis of the extortion charge—threatening to "get the MS-13 over here" to "protect his visit." [ECF 34], Ex. 3 at pp. 5, 21–22.

## CONCLUSION

For the reasons set forth above, I grant Defendants' Motion [33] and dismiss this matter with prejudice.

IT IS SO ORDERED.

DATED this 4th day of February, 2026.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

10 – Opinion and Order